IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BRISTOL-MYERS SQUIBB CO., E. R. SQUIBB & SONS, L.L.C., ONO PHARMACEUTICAL CO., LTD., and TASUKU HONJO,<br><br>Plaintiffs,<br><br>v.<br><br>MERCK & CO., INC. and MERCK SHARP & DOHME CORP.,<br><br>Defendants. | Civil Action No. 14-1131-GMS<br>Civil Action No. 15-560-GMS<br>Civil Action No. 15-572-GMS |

## MEMORANDUM

## I. INTRODUCTION

On September 4, 2014, plaintiffs Bristol-Myers Squibb Co., E. R. Squibb & Sons, L.L.C. ("BMS"), Ono Pharmaceutical Co., Ltd. ("Ono"), and Tasuku Honjo ("Honjo"), (collectively "the Plaintiffs") filed case number 14-1131-GMS alleging infringement of U.S. Patent No. 8,728,474 ("the '474 Patent") by defendants Merck & Co., Inc. and Merck Sharp & Dohme Corp. (collectively "Merck"). (D.I. 1.) On June 30, 2015, the Plaintiffs filed case number 15-560-GMS alleging infringement by Merck of U.S. Patent No. 9,067,999 ("the '999 patent"), and on July 7, 2015, the Plaintiffs filed case number 15-572-GMS alleging infringement by Merck of U.S. Patent No. 9,073,994 ("the '994 patent"). Presently before the court is the Plaintiffs' Motion to Transfer a related case from the District of Massachusetts pursuant to 28 U.S.C. § 1404(a) (D.I. 160) and accompanying briefs. For the reasons that follow, the court will deny the Plaintiffs' motion.

## II. BACKGROUND

Plaintiffs allege that Merck induces or contributes to infringement of the '474, '999, and '994 patents by making and selling pembrolizumab, a biologic product that Merck sells in the United States under the name Keytruda® for treatment of certain patients with melanoma or nonsmall-cell lung cancer. *See Bristol-Myers Squibb Co. et al. v. Merck & Co. Inc.*, C.A. No. 14-1131-GMS; *Bristol-Myers Squibb Co. et al. v. Merck & Co. Inc.*, C.A. No. 15-560-GMS; *Bristol-Myers Squibb Co. et al. v. Merck & Co. Inc.*, C.A. No. 15-572-GMS.  The three cases have not been consolidated, but have been coordinated to have identical pretrial schedules.

Non-party Dana-Farber Cancer Institute, Inc. ("Dana-Farber"), a Massachusetts nonprofit hospital headquartered in Boston, has brought suit in the District of Massachusetts challenging inventorship under 35 U.S.C. § 256 on five patents including the '474 Patent, the '999 Patent, the '994 Patent, as well as U.S. Patents Nos. 7,595,048 (the "'048 patent") and 8,168,179 (the "'179 patent"). *Dana-Farber Cancer Institute, Inc. v. Ono Pharmaceutical Co., Ltd., Tasuku Honjo, E. R. Squibb & Sons L.L.C., and Bristol-Myers Squibb Co.*, C.A. No. 15-13443-MLW (D. Mass.). Dana-Farber alleges that Drs. Gordon Freeman and Clive Wood should also be named as inventors. *Id.,* (D.I. 1.)  On May 2, 2016, the U.S. District Court for the District of Massachusetts (the "Massachusetts court") ordered BMS, Ono, and Honjo to file a motion in this court requesting a decision on a transfer motion they had filed in the Massachusetts Case. *Id.,* (D.I. 85) ("Ex. A"). The Massachusetts Court observed that there is a "likelihood of substantial overlap" between the facts underlying Dana-Farber's inventorship challenge and Merck's invalidity defenses relating to the Honjo patents. Ex. A at 8. [1]

---

[1] As will be discussed, the court does not feel transfer under 28 U.S.C. § 1404(a) is permissible in this case. In addition, the court questions whether there is sufficient overlap for the first-filed rule to control.  Where two lawsuits that are "mirror image" cases are filed in different jurisdictions, the first-filed action is given preference. *Corixa Corp. v. IDEC Pharm. Corp.,* C.A. No. 01–615–GMS, 2002 WL 265094, at *2 (D. Del. Feb. 25, 2002)

According to the Plaintiffs, transfer of the Massachusetts case would avoid the possibility of duplicative litigation, inconsistent rulings, and the need to educate more than one court on the facts underlying both disputes. (D.I. 193 at 1.) The Plaintiffs contend that Merck's allegations that the Honjo Patents are invalid are based upon work done by Drs. Freeman and Wood. (*Id.* at 2.) The Plaintiffs also assert that Merck has raised the inventorship issue in its discovery requests. (*Id.*) Moreover, the Plaintiffs claim that Merck has alleged a Section 102(f) derivation defense based on the inventorship dispute in the Massachusetts Case and subpoenaed Drs. Freeman and Wood, Dana-Farber, and other scientists and attorneys concerning the inventorship dispute. (*Id.*)[2]

Merck objects to transfer to the extent that the Massachusetts case will be consolidated with any of the cases pending because consolidation will slow litigation. (D.I. 184 at 1.) According to Merck, the Massachusetts case involves claims that are entirely distinct from the claims and defenses at issue in the Merck cases. (*Id.*) Merck points out that fact discovery has ended, expert discovery will conclude in September 2016, and trial of the first case is set for April 3, 2017. (*Id.*) Thus, Merck argues that transfer of a later filed lawsuit, involving distinct claims from those in the Merck cases will accomplish no discovery efficiencies. (*Id.* at 3). In response, the Plaintiffs claim that they did not request consolidation of the Massachusetts Case with the

---

(citing *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)). The Third Circuit has explained that for the rule to apply, the later-filed case must be "'truly duplicative of the suit before [the court].' That is, '[t]he one must be materially on all fours with the other . . . . [T]he issues must have such an identity that a determination in one action leaves little or nothing to be determined in the other.'" *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 334 n.6 (3d Cir. 2007) (quoting *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997)). The first-filed rule requires that "only truly duplicative proceedings be avoided. When the claims, parties or requested relief differ, deference may not be appropriate." *Complaint of Bankers Trust Co. v. Chatterjee*, 636 F.2d 37, 40 (3d Cir. 1980). Here, the parties are different, the causes of action are different, two of the patents at issue in Massachusetts are not involved in the Merck cases, the underlying facts on which the claims are based are different, the decisionmaker is different (one trial is bench, the other jury), and the relief sought is different. (D.I. 184 at 5.) Moreover, because the parties do not seek consolidation, (D.I. 193 at 4), it is unclear how much judicial efficiency will actually be improved by transferring the case.

[2] Merck challenges these contentions in its responsive briefs, arguing that its defenses are not based on inventorship and that the ultimate issues to be decided are not the same. (D.I. 184 at 2–3.)

pending Delaware Cases, but only transfer of the related Massachusetts Case so that a single court can consider the same operative set of facts regarding the challenges to the Honjo patents and minimize the possibility of inconsistent fact findings or inconsistent outcomes by two different forums. (*See* D.I. 193 at 1.)

Dana-Farber opposes the motion to transfer its case arguing that under 28 U.S.C. § 1404(a) it would have been impermissible to bring this case before this court. (D.I. 187 at 1.) Dana-Farber's claim for correction of inventorship arises out of collaboration activities and inventive contributions made in Massachusetts. (*Id.* at 9.) Transfer under § 1404(a) is prohibited here because Dana-Farber's claim does not arise out of any contacts by Ono or Honjo with Delaware as required by section 3104(c), nor would Ono's or Honjo's contacts with Delaware have satisfied the constitutional requirement for the exercise of specific personal jurisdiction. (*Id.* at 9–10.)

## III.   STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Under this provision, a district court may exercise "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). The purpose of transfer is to protect litigants, witnesses, and the public from the unnecessary waste of time, energy, and money. *See Virgin Wireless, Inc. v. Virgin Enters. Ltd.*, 201 F. Supp. 2d 294, 299 (D. Del. 2002) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

The court undertakes a two-step inquiry in order to resolve a motion to transfer. "The court

4

first asks whether the action could have been brought in the proposed transferee venue and then determines whether transfer to a different forum would best serve the interests of justice and convenience." *Smart Audio Techs., L.L.C. v. Apple, Inc.,* 910 F. Supp. 2d 718, 724 (D. Del. 2012). At each step, the defendant has the burden to demonstrate that a transfer is appropriate, *Jumara,* 55 F.3d at 879–80, and "unless the balance of convenience of the parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970).

## IV.    DISCUSSION

### A.  The Propriety of the Transferee Forum

Dana-Farber argues that, as a threshold matter, the Massachusetts case is not one that "might have been brought" in Delaware, a prerequisite for transfer under § 1404(a).  28 U.S.C. § 1404(a).  Specifically, Dana-Farber argues that the court could not have obtained personal jurisdiction over Japanese residents Ono and Honjo to adjudicate its inventorship claims in Delaware because the inventorship action does not arise out of the infringement claims against Merck or out of any other purposeful activities of Ono or Honjo in Delaware.  (D.I. 187 at 7.)

To exercise specific personal jurisdiction over a nonresident defendant under the Delaware long-arm statute, courts must find that a plaintiff's cause of action "aris[es] from" a defendant's "jurisdictional act" such as the "transact[ion of] business."  10 Del. C. § 3104(c)(1).  Delaware courts assess personal jurisdiction over nonresident defendants based on Delaware contacts sufficient to satisfy both the long-arm statute, 10 Del. C. § 3104(c), and the Due Process Clause of the Constitution.  *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Asso.,* 819 F.2d 434, 436–37 (3d Cir. 1987).  The Delaware long-arm statute provides the following, in pertinent part:

5

(c) As to a cause of action brought by a person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in this State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any persistent course of conduct in the State or derives substantial revenue from services or things used or consumed in the State; . . .

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. Code § 3104.

Delaware courts have construed the statute as conferring jurisdiction to the maximum extent permissible under the due process clause. *Transportes Aereos De Angola v. Ronair, Inc.,* 544 F. Supp. 858, 864 (D. Del. 1982). Under a Due Process analysis, personal jurisdiction may be either specific or general. "To establish specific jurisdiction a plaintiff must show that the defendant has minimum contacts with the state 'such that [the defendant] should reasonably anticipate being haled into court there.'" *North Penn Gas Co. v. Corning Natural Gas Corp.,* 897 F.2d 687, 690 (3d. Cir. 1990) (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985). To assert general jurisdiction, the plaintiff must establish that the contacts with Delaware were "continuous and substantial." *Provident National Bank v. California Federal Savings & Loan Association,* 819

6

F.2d 434, 437 (3d Cir. 1987).

Because Ono and Honjo are nonresidents, Delaware's Long Arm Statute requires an in-state act by them *"that sets in motion a series of events which form the basis for the cause of action before the court." Sears, Roebuck & Co. v. Sears plc*, 752 F. Supp. 1223, 1227 (D. Del. 1990). In this case, the invention did not involve contact with Delaware because it occurred in Massachusetts. (D.I. 187 at 8.)  However, the Plaintiffs argue that this court has jurisdiction over Ono and Honjo for the Massachusetts case based on the Plaintiffs' filing of the infringement lawsuit in Delaware. (D.I. 161 at 9).  They rely on case law which holds that Delaware courts can exercise personal jurisdiction over defendants in a cause of action that "arises from" a "jurisdictional act" in Delaware.  Specifically, Plaintiffs rely on *Foster Wheeler Energy Corp. v. Metallgesellschaft AG*, 1993 WL 669447 (D. Del. Jan. 4, 1993), and contend that the court has jurisdiction because a party can be considered to have consented to jurisdiction by "instituting another, related suit" that has some "logical relationship" to the present suit.  *Id.* at *1, 4.  The *Foster Wheeler* court found that "it would defy logic and basic standards of fairness" to allow the plaintiff "to enjoy the full benefits of access to [this Court] qua plaintiff, while nonetheless retaining immunity from the courts' authority qua defendant in respect to claims by the very party [Foster Wheeler] it was suing there."  *Id.* at *3.  Plaintiffs argue that there is personal jurisdiction in the Massachusetts because they brought a lawsuit in a case that had a logical relationship to the litigation in this case.

The court does not agree that the requisite logical relationship exists between the Massachusetts and Delaware cases to confer personal jurisdiction.  In *Foster Wheeler*, the court considered two parallel suits between identical parties.  The *Foster Wheeler* court found that it had

7

personal jurisdiction over the defendants as to Foster Wheeler's claim for patent infringement because the same defendants had procured a dismissal of that exact claim in a parallel suit against Foster Wheeler. *Id.* at *4. In contrast, the *Foster Wheeler* reasoning should not apply in this case because Dana-Farber's action to correct inventorship does not overlap to the same extent in terms of the parties and the claims at issue. The Delaware and Massachusetts litigation are two unique causes of action and only one of the parties is the same in both cases.

Other cases have clarified that the analysis to determine whether there is a logical relationship should focus on whether the present cause of action arises from the filing of the prior litigation. In *Funai Elec. Co. v. Personalized Media Commc'ns, LLC*, Judge Andrews found that there was no "logical relationship" where separate patent infringement cases involved the same patent family and similar claims, but where there was no complete identity of parties. No. CV 15-558-RGA, 2016 WL 370708 (D. Del. Jan. 29, 2016). Judge Andrews wrote: "the crux of the issue is whether [the plaintiff's] claims has its origin in the same facts giving rise to [the defendant's] earlier patent enforcement activities." *Id.* at *3

The case *Sprint Nextel Corp. v. iPCS, Inc.*, No. CIV.A. 3746-VCP, 2008 WL 2737409 (Del. Ch. July 14, 2008) is illustrative. In that case, the Delaware Court of Chancery found that the "arising out of" requirement was not satisfied because defendant's earlier actions were not "critical steps in the chain of events resulting in the cause of action before the court." *Id.* at *10. Specifically, the court wrote that a claim arises out of a transaction where "the claim has its origin in the asserted transaction." *Id.* at *7 n.51 (citing *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986). The court reasoned that there was not a logical relationship because the subsequent litigation did not directly involve the Court's Final Order and Judgment in the earlier

8

action. *Id.* at *2. The court reasoned:

> Although certain legal issues probably will overlap between this case and the Earlier
> Delaware Action, and there likely will be at least some questions of collateral estoppel or
> issue preclusion in this action regarding the exclusivity provisions of the Management
> Agreements, that does not mean this litigation . . . arises from the [prior litigation.]

*Id.* at *9. The court went on to explain: "Similar facts are not the same facts. While the 'character

of conduct' . . . may be similar . . . the two transactions present separate factual circumstances.

Even if the Earlier Delaware Action never happened, the Clearwire Transaction presumably still

would have occurred and given rise to this litigation." *Id.* at *10. Thus, that court explicitly

considered whether, under *Foster Wheeler*, the two actions had a "logical relationship" and

concluded that although the claims arose out of the same contracts, they involved different

underlying factual contexts. *Id.* at *8.

In conclusion, the Massachusetts litigation does not arise out of the same transaction or

occurrence as the Delaware litigation creating a "logical relationship" between the two suits such

that they are essentially "parallel suits between identical parties." *Funai Elec. Co.*, 2016 WL

370708 at *2. Because this court cannot exercise personal jurisdiction over Ono and Honjo

pursuant to the Delaware long-arm statute, the court not need to consider a due process analysis.

Ultimately, the power of a District Court under § 1404(a) to transfer an action to another district

does not depend upon the wish or waiver of the defendant, but upon whether the transferee

district was one in which the action "might have been brought" by the plaintiff. *Hoffman v.

Blaski*, 363 U.S. 335, 342–44 (1960). Accordingly, because this court would not have had

jurisdiction over Honjo and Ono, transfer may not occur under § 1404(a). *Id.* (reversing transfer

where transferee court lacked personal jurisdiction over defendant).

## V.    CONCLUSION

9

For the reasons stated above, the court will deny the plaintiffs' motions to transfer to the

District of Massachusetts pursuant to 28 U.S.C. § 1404(a).

Dated: July _13_, 2016

UNITED STATES DISTRICT JUDGE

10