IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRISTOL-MYERS SQUIBB CO., <br> E. R. SQUIBB & SONS, L.L.C., <br> ONO PHARMACEUTICAL CO., LTD., and <br> TASUKU HONJO, <br><br> Plaintiffs, <br><br> v. <br><br> MERCK & CO., INC. and <br> MERCK SHARP & DOHME CORP., <br><br> Defendants. | C.A. Nos. 14-1131-GMS; 15-560-GMS; 15-572-GMS |

### DEFENDANTS' OPENING LETTER BRIEF REQUESTING PERMISSION TO FILE A MOTION FOR SUMMARY JUDGMENT

Dated: October 7, 2016

Of Counsel:

SIDLEY AUSTIN LLP
David T. Pritikin
One South Dearborn
Chicago, IL 60603
(312) 853-7000

Jeffrey P. Kushan
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

McCARTER & ENGLISH, LLP
Michael P. Kelly (#2295)
Daniel M. Silver (#4758)
Benjamin A. Smyth (#5528)
405 N. King St., 8th Floor
P.O. Box 111
Wilmington, DE 19899
(302) 984-6300
mkelly@mccarter.com
dsilver@mccarter.com
bsmyth@mccarter.com

*Attorneys for Defendants*
*Merck & Co., Inc. and*
*Merck Sharp & Dohme Corp.*

ME1 23498480v.1

October 7, 2016

**VIA CM/ECF & HAND DELIVERY**
The Honorable Gregory M. Sleet
United States District Court
For the District of Delaware
844 N. King Street
Wilmington, DE 19801

        RE:    *Bristol-Myers Squibb Co., et al. v. Merck & Co., Inc., et al.*,
                  C.A. Nos. 14-1131-GMS, 15-560-GMS & 15-572-GMS

Dear Judge Sleet:

      Pursuant to the Court's Scheduling Order of January 29, 2015 (D.I. 41), defendants Merck & Co., Inc. and Merck Sharp & Dohme Corp. (collectively, "Merck") respectfully seek permission to file a motion for summary judgment that, if granted, will completely dispose of all three related cases and avoid the need for an eight-day jury trial in April 2017.

      The cases involve three related patents, sharing a common specification and claiming the use of many different antibodies that bind to a protein, PD-1, to treat cancer. The disclosure in the patents does not come close to satisfying the written description requirement articulated by the Federal Circuit *en banc* in *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1349-50 (Fed. Cir. 2010) and applied in other recent cases.

      In *Ariad*, the Federal Circuit held that broad "genus" claims of this kind are invalid unless the patent specification either identifies the structural features common to the claimed genus or discloses a representative number of species within the genus. The patent specification here does neither. Indeed, this is what the lead inventor, Tasuku Honjo, has freely admitted. He testified at his deposition that anti-PD-1 antibodies do not have <u>any</u> common structural features that make them useful in treating cancer and that the two examples of anti-PD-1 antibodies mentioned in the patents are not representative of all of the different types of anti-PD-1 antibodies that the patent claims cover.

      No expert for Plaintiffs has offered opinions that the *Ariad* requirements are met. For example, Plaintiffs' expert, Dr. Omid Akbari, offered no opinion in his reports that there is a common structure shared by all anti-PD-1 antibodies that can be used in the claimed methods, or that the examples of antibodies mentioned in the patents are representative of all the different anti-PD-1 antibodies that can be used to practice the claimed methods. Plaintiffs therefore will not be able to proffer the evidence needed to sustain their claims at trial. In the face of the admissions of their fact witnesses, the inability of Plaintiffs' experts to propound opinions necessary to the *Ariad* requirements, and other undisputed facts, Plaintiffs will not be able to demonstrate that there are genuine issues of material fact that warrant the vast expenditure of resources by the parties and the Court that a lengthy jury trial will entail.

**The Inventors Did Not Possess The Claimed Genus of Anti-PD-1 Antibodies that Treat Cancer**

The patents in this case relate to monoclonal antibodies that bind to the PD-1 receptor, and in particular, their use in treating cancer. The PD-1 receptor is a protein found on activated T cells. When one of its ligands (PD-L1 or PD-L2) binds to the PD-1 receptor, an "immunosuppressive signal" is sent to the T cells that suppresses the natural behavior of those cells that enables them to target and destroy cancer cells. The purported invention involves giving the patient an anti-PD-1 antibody that either prevents the ligands from binding to PD-1 or otherwise inhibits this immunosuppressive signaling.

The patents claim methods that use any and all antibodies to human PD-1 that existed when the patents were filed or which might be developed in the future to treat cancer. There are likely tens of thousands of different antibodies that bind human PD-1, some of which potentially could be used in the claimed methods and some of which could not. A variety of reasons exist why an antibody might bind PD-1 but not be effective to treat cancer—*e.g.*, it might bind to the wrong place on PD-1, bind to PD-1 too loosely, or bind to PD-1 but not effectively prevent the immunosuppressive signal of PD-1. In short, an anti-PD-1 antibody may fail to treat cancer for any number of unknown and unpredictable biological reasons.

Despite this, as admitted by the lead inventor Dr. Honjo, the patents do not identify *any* common structural features of anti-PD-1 antibodies that would allow a person working in the field to know which antibodies will work and which will not. Indeed, Plaintiffs' experts nowhere suggest a common structure of all anti-PD-1 antibodies that will work to treat cancer even exists. Instead, all that is identified in the patents is a desired functional effect of such antibodies. The patents thus fail the first of the two *Ariad* tests for demonstrating possession.

The patents also fall woefully short of the second *Ariad* test—they do not describe a representative number of "species" of anti-PD-1 antibodies within the genus of antibodies whose use is claimed by the patents. As Dr. Honjo, other fact witnesses, and Plaintiffs' experts all admit, the patent claims cover use of many different anti-PD-1 antibodies, including those that block human PD-1 from binding to its ligands as well those that do not block ligand binding but still inhibit the immunosuppressive signal of PD-1. Despite this, the patents do not disclose examples of antibodies that are representative of this diverse genus of anti-PD-1 antibodies. Dr. Honjo admitted this at his deposition, and, for good reason, Plaintiffs' expert reports likewise do not offer a contrary opinion.

In fact, the patents mention only one antibody (the "J110" antibody) that even binds to human PD-1, a basic prerequisite for use in human patients.[1] No credible assertion could possibly be advanced that this one antibody is representative of all the different anti-PD-1 antibodies that could be used in the claimed methods for treating cancer in human patients. The J110 antibody has never been used, even experimentally, to treat cancer in any human, and there

---

[1] The only other antibody mentioned in the patents—the "J43" antibody—is an antibody to *mouse* PD-1. It cannot bind to human PD-1 and thus can have no functional effect in a human cancer patient. While the patents report results of certain experiments putatively involving this mouse antibody, those experiments are irrelevant in meeting the written description requirement for the asserted claims for the simple reason that these claims, when applied to human patients, will not cover use of J43.

2

are no data in the patents from testing its properties—nothing in the patent shows the J110 antibody has any ability to block the binding of PD-1 to its ligands, to inhibit the immunosuppressive signaling of PD-1, or to be useful in treating cancer. The evidence is also undisputed that other researchers, such as those at Wyeth, concluded based on their testing that J110 does not block PD-1 from binding to its ligands and has little or no effect on the immune response.

Dr. Honjo also has admitted that J110 is not representative of the structures of either of the two anti-PD-1 antibodies that has been shown to treat cancer—pembrolizumab (the accused antibody sold by Merck under the name Keytruda®) and nivolumab (sold by Plaintiff Bristol-Myers under the name Opdivo®)—and that one cannot predict the amino acid sequence of either of these antibodies from the structure of J110. Indeed, neither of these two antibodies bears any resemblance to the J110 antibody, either in their structures or in their functional effects.

Plaintiffs or their expert may dispute the experimental evidence demonstrating that J110 does not block PD-1 from binding its ligands or that J110 will not treat cancer if given to a human patient. However, what Plaintiffs cannot dispute is that this single example of an anti-human PD-1 antibody is not representative of the structures of the many different species of anti-human PD-1 antibodies that can be used to treat cancer.

**The Written Description Requirement**

The purpose of the written description requirement is to "show that the inventor actually invented the invention claimed," as opposed to merely identifying an unmet need. *Ariad*, 598 F.3d at 1351. The Federal Circuit has stressed that the problem is especially acute in cases like this where the patentee asserts broad, generic claims based on function rather than structure—on what the invention does, rather than what the invention is. *Id.* at 1349. The Federal Circuit has repeatedly held that the written description requirement bars claims "that merely recite a description of the problem to be solved while claiming all solutions to it," thus ensnaring "any compound later actually invented and determined to fall within the claim's functional boundaries." *Id.* at 1353. In other words, "a patent is not a hunting license. It is not a reward for the search, but compensation for its successful conclusion." *Id.* (quoting *Brenner v. Manson*, 383 U.S. 519, 536 (1966)). The written description requirement is thus an essential safeguard against unjustified preemption of future innovation.

The patents here are the antithesis of the "precise definition, such as by structure, formula, chemical name, physical properties, or other properties of species falling within the genus sufficient to distinguish the genus from other materials" that is required to constitute an adequate written description. *Ariad*, 598 F.3d at 1350. Instead, the patents merely provide a plan for future research—they propose that anti-PD-1 antibodies could potentially be useful in treating cancer— but they leave the work of making and testing all of the possible anti-PD-1 antibodies to future researchers. As the Federal Circuit has explained, the written description requirement guards against patents with disclosures that amount to merely an invitation for future research to find a real solution, such as an active product or useful method of treatment; otherwise, inventors could use broad functional claims as improper "attempt[s] to preempt the future before it has arrived." *Id.* at 1353 (quoting *Fiers v. Revel*, 984 F.2d 1164, 1171 (Fed. Cir. 1993)). However laudable may be the basic scientific research reflected in the patents here, that research does not entitle the inventors, who lacked possession of the claimed genus, to broad patent protection that preempts the future.

3

**Plaintiffs' Arguments**

Based on discovery responses and expert reports, the arguments Plaintiffs are expected to advance simply ignore the *Ariad* requirements and instead offer up a series of arguments that are legally incorrect and therefore insufficient to avoid summary judgment.

First, they may argue that the claims are not directed to the therapeutic agents themselves, but instead to methods of using them. This, they may contend, means that their method claims are not subject to the same written description requirements as claims directed to a genus of molecules themselves—*i.e.*, they did not need to disclose representative examples or common structures. But those arguments are simply wrong. The Federal Circuit has ruled unambiguously that method of treatment claims covering the use of a broad genus stand on the same footing as claims to the genus itself. In fact, some of the leading written description cases involved method claims like those at issue here, where claims to methods of treatment were invalidated because they failed to provide an adequate written description of the genus of compounds or agents to be used in the methods. *Ariad*, 598 F.3d at 1349-50; *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 927 (Fed. Cir. 2004).

Next, Plaintiffs may contend the patents provide an adequate written description because a skilled person, using conventional techniques identified in the patents, could make without undue effort the different anti-PD-1 antibodies covered by their claims. But the Federal Circuit has specifically rejected the idea that such a disclosure is sufficient to meet the written description requirement for a claim to a genus of antibodies. *Abbvie Deutschland GmbH & Co. v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1300-01 (Fed. Cir. 2014); *Centocor Ortho Biotech v. Abbott Labs.*, 636 F.3d 1341, 1350-51 (Fed. Cir. 2011). As those and other cases have explained, the law governing written description requires more than the disclosure of some experimental findings and a research plan that could be followed by a skilled person to make the various anti-PD-1 antibodies that fall within the scope of the claims.

Finally, Plaintiffs may advance an argument that by disclosing the antigen (in this case PD-1), they have license to claim any method for using any antibody to that antigen. But that is plainly not the law. *Centocor* confirmed this is not a viable theory to support a broad claim to antibodies that share a particular functional property other than simply binding to the antigen. 636 F.3d at 1351-52. In this case, there is no dispute that some antibodies that bind to PD-1 will not work to treat cancer, and simply identifying the antigen (PD-1) does nothing to differentiate those that will work from those that will not.

**Summary Judgment**

These cases are particularly well-suited to resolution by summary judgment. Plaintiffs have not even attempted to meet the requirements of *Ariad* and cannot meet those requirements. The alternative grounds Plaintiffs offer to support the patents can be rejected as a matter of law because they are not legally viable under applicable Federal Circuit law.

Plaintiffs may try to create confusion by arguing that written description is an issue of fact and claim there are disputed questions of fact concerning the properties of various anti-PD-1 antibodies. But, of course, the standard for summary judgment is whether there are genuine issues of *material* fact. In this case, Plaintiffs can only avoid summary judgment by coming forward with evidence showing that the requirements of *Ariad* are satisfied—something they are disabled from doing by virtue of the admissions of their witnesses, the omissions in their experts'

reports, and the ultimately incontestable fact that the inventors were simply not in possession of any antibody that could be used to treat cancer in a human, let alone the broad genus claimed.

Numerous courts have granted summary judgment or JMOL in these circumstances, and those decisions have been affirmed by the Federal Circuit. *See, e.g.*, *Rochester*, 358 F.3d 916; *Boston Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353 (Fed. Cir. 2011); *Billups-Rothenberg Inc. v. Assoc. Reg'l & Univ. Pathologists Inc.*, 642 F.3d 1031 (Fed. Cir. 2011); *Atl. Research Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345 (Fed. Cir. 2011); *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368 (Fed. Cir. 2009); *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115 (Fed. Cir. 2008); *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336 (Fed. Cir. 2005), *reh'g en banc denied*, 433 F.3d 1373 (Fed. Cir. 2006).

Merck respectfully requests that the Court permit it to file this summary judgment motion. On reading the full briefing submitted by the parties, if the Court believes that Merck's position is meritorious, it can schedule a hearing and resolve all three pending cases. On the other hand, if after receiving the briefs, the Court believes that trial is necessary, it can simply deny the motion and let the parties proceed to trial in the three pending cases.

The written description issues will need to be fully briefed at some point. There is no undue burden on Plaintiffs to address these issues now, and there is great potential benefit to the parties and the Court if the cases can be resolved at this juncture without the need for a jury trial or trials.

**Merck's 101 Motion**

Merck moved to dismiss the complaints in C.A. Nos. 15-560-GMS and 15-572-GMS. The Court denied those motions, holding that, although the claims "touch[] upon a natural phenomenon by using T cells to activate the immune system," there were issues regarding whether the patent claims added enough to nonetheless qualify as patent-eligible processes that were "better resolve[d] after discovery." *See* D.I. 70 (C.A. No. 15-560-GMS) at 3.

No such issues now exist. As the lead inventor's testimony demonstrates, the elements in the asserted claims, whether considered individually or together, do not define an inventive concept beyond the natural phenomenon identified by the Court.[2] Because patent eligibility under Section 101 presents an issue of law, Merck believes that it would be most efficient for this issue to be resolved in advance of any trial in these cases and concurrently with summary judgment briefing.

Respectfully submitted,

/s/ Michael P. Kelly

Michael P. Kelly (#2295)
cc:     All counsel of record (via CM/ECF and email)

---

[2] For example, Dr. Honjo testified that his supposed invention is not tied to any new anti-PD-1 antibody and is "nearly identical" to a method described in a prior patent application. Honjo Tr. at 218:2-6 ("Q. And that's [the WO557 application filed by Drs. Wood and Freeman] basically the same thing that you claimed in your patents, isn't it? A. In the claim sentence, yeah, almost identical, yes.") (objection omitted).